Opinion of the Court.
Kirkpatrick C. J.
This case is too plain to admit either of argument or illustration. The words, “ if any such her surviving,” make no difference either in the sense or in the operation of the devise. Sarah Ellis took an *494 estate tail general, and William, the second, took a vested - remainder in tail male, as devisees under the will of their father. This remainder, to William, was limited to take effect and be enjoyed after the termination of the particular estate devised to Sarah Ellis and the heirs of her body, and upon the death of Rebecca, her only daughter, without issue, it did so take effect, and the said William actually entered into and became possessed of the premises so devised, and continued to be so thereof possessed, until the time of his death.
*We have then only to inquire, who was the heir male of the body of William. And surely, under the canons of descent in the common law, this can never be made a question among lawyers; for it is well known that the male must be preferred to the female ; and that among the males, the elder must be preferred to the younger; and it is also well known, that, subject to these rules, the lineal descendants, to the remotest generations, shall represent, that is to say, shall stand in the place of their ancestor, and take that which he- would have taken if living.
Upon these principles, it is obvious that William, the third, if living, would be the heir male of the body of William, the second, in exclusion not only of Louisa, his sister, but also of Joseph, his brother. And it is equally clear that William, the fourth, in exclusion of his sister Ann, and his brother, Earl, stands by right of representation, in the place of his father, and will take that which he would have taken if alive. William, the fourth, then is the heir male of the body of William, the second, and as such, is entitled to the inheritance per formam doni.
I am of opinion, therefore, that the plaintiff is entitled to recover, and that judgment be entered for him accordingly.
Since writing the foregoing, I have been favoured with a copy of the argument of the defendant’s counsel, in this case, wdiich is very ingenious, but I think'not solid.
It is admitted in that argument (or rather it is not denied, for indeed it cannot be denied) that if the words, if any such her surviving, were not contained in the devise, Sarah Ellis would have taken an estate tail general, and *495 William, the second, a vested remainder in tail special, that is, in tail male. It seems to be admitted, Loo, that even as it stands, Sarah Ellis took an estate tail; but then it is insisted, that the words, if any such her surviving, raise up a contingency upon which William’s remainder must depend; that Sarah having left a daughter, Rebecca, surviving her, that contingency has never happened nor can now happen; and that therefore the remainder is defeated.
The very same argument might be used in every case where there is a limitation of a remainder upon a dying of the tenant in tail without heirs of the body, or without issue, or without leaving issue, or words to to that effect. If a devise were to one and the heirs of his body, and if he die without such heirs, then *over; and if the devisee were to die leaving a son, it might be said, as it is here said, true it is that the devisee takes an estate tail, but then the words, if he die without such heirs, raise up a contingency upon which the remainder is to depend; and as in truth and in fact he has not died without such heirs, for he has left a son in full life, the contingency has not therefore happened nor can now happen, and of course the remainder must fall. But however plausible this argument might be, yet certainly it would be plausible only, and not conclusive. And the reason is, that the words, if he die without heirs of the body, without issue, without leaving issue, without such heirs surviving him, and equivalent expressions of that kind, are not used, in devises of land, in their common and vulgar sense, but in a legal and technical sense, and always, when unqualified by the connexion in which they stand, signify not a definite failure of issue at the death of the tenant in tail, but an indefinite failure thereof at any future period how remote soever the same may be. (a)
What then can be the effect of the words, if any such her *496 surviving, thus annexed to the word heirs, in this devise ? -Can they at all qualify the meaning of it?
An heir is one on whom the law casts the estate immediately upon the death of the ancestor. It is such an one him (the ancestor) surviving, for the law never casts an estate upon dead men. These words then can, by no rational construction, add to, alter, change, enlarge, or limit the meaning of the word heirs. The devise is just the same with them as it would have been without them. The very term heir necessarily implies that he survives the ancestor.
But again. Upon a careful examination we shall find that if these words do raise a contingency, it is a contingency attached to the devise to the heirs of the body of Sarah Ellis, and not to the remainder over to William, the second. It is to Sarah Ellis for life, and after her decease to the heirs of her body, if any such her surviving, and for want of such heirs then to William. Now suppose we were to make out, in words, the alternate of this pretended condition or contingency, what should we say ? Should we not say to the heirs of her body if any such her surviving, but if none such her surviving, then, not to the heirs of her body, but for want thereof, to William ? This is the alternate most obviously presented by the words as they stand con*nected. The testator does not place the remainder upon this circumstance, but upon the want of such heirs, heirs of the body evidently meaning ; and certainly, so meaning, it will better effect the general intent of the testator. But we are not left to conjecture on this subject, nor even to the deductions of reason. The testator himself has settled it. He has said, that for want of such heirs, (that is, heirs of the body of William, the second) then to my sons Joseph Hugg, (who was his eldest son and heir at law) and Samuel Hugg, their heirs and assigns forever; thereby disposing of the whole estate and leaving no reversion. To say, therefore, that he intended it should revert to his heirs at law, upon any intermediate contingency, or that it should at all come into his hands before the failure of the issue male of William, the second, or in any other way or proportion than by the *497 words of the devise, would be going directly contrary to the express declarations of the testator.
Upon the most critical exposition of the words, then, as they are used and understood in the language of the law, I think the construction is plainly against the defendant; and as to the general intent, it completely overwhelms him. bTothing can be more obvious, than that the testator intended to give this property to his daughter, to be enjoyed by her during her life-time, and then to her liireal descendants, and when they failed, to his son William, in tail male. Now, if it be admitted that Sarah Ellis took an estate tail general, there must have been some part of the estate left, there must have been either a remainder or a reversion for somebody, upon the failure of her issue. Can it be supposed that this was intended to go to the testator’s heir at law ? He certainly attempts to make an estate tail and to limit the remainder over, but does he say a word about the heir at law, or about the estate returning to him ? not a word. Would any rational man, upon the whole will, draw the conclusion that he intended it should so revert? Well then, on the other hand, if it be not an estate tail in Sarah Ellis, but for life only, and the words heirs of the body can be tortured to mean child or children, which, I believe in such a connexion, they never did mean; then such child or children, if they could take at all, must take an estate for life only, for there are no words of inheritance, no words of perpetuity, to carry a fee to them, and therefore if Rebecca, the only child of Sarah Ellis, had had a son and died, he would not have *taken, for his mother had but an estate for life only ; and the inheritance must have gone to the heir at law, as in the other case, in exclusion of the whole family of Sarah. Could this have been the testator’s intention? Shall we then torture the whole instrument, beat down the testator’s arrangements and prostrate the settlement which he made for this branch of his family, in order to give a fanciful application to words, which as they stand in this will, are merely superfluous and without meaning ?
As to the second ground of argument, to wit, that William 4th is not the heir male of the body of William 2nd. *498 I am persuaded that upon a more careful perusal of the case, it will not be insisted upon. I am therefore, as before, of opinion that judgment must be for the plaintiff.
Judgment for plaintiff.

 Wallington vs. Taylor, Sax. 314. Den vs. Allaire, Spen. 6. Seddel vs. Wills, Spen. 223. Vreeland vs. Blauvelt, 8 C. E. Gr. 483. Condict vs. King, 2 Beas. 375. Wurts vs. Page, 4 C. E. Gr. 365. Den. Harris vs. Taylor, ante 413. Den. Trumbull vs. Gibbons, 2 Zab. 117. Den. Secquil vs. Moore, Coxe 386. Nix. Dig. 1032, § 27.